# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

**THAN UNDERWOOD,**
Plaintiff,

*v.*

**CHENEY UNIFIED SCHOOL DISTRICT NO. 268 and MARC A. WOOFTER, in his individual and official capacities,**
Defendants.

Case No. 6:26-cv-01026-AWM-BGS

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motion to Dismiss (Doc. 12). For the reasons explained below, Defendants' Motion is granted.

### I. BACKGROUND AND PROCEDURAL HISTORY

This case arises from Plaintiff Than Underwood's employment with Defendant Cheney Unified School District No. 268 (USD 268) as a teacher from 2003 to 2024. Doc. 1 ¶ 5. On February 1, 2024, a student filed a formal Title IX complaint against Plaintiff, and USD 268 conducted an investigation. Doc. 1, 1–3. The investigation found that Plaintiff engaged in behavior "inconsistent with our organization's values, policies, and standard of conduct." Doc. 1–3. Plaintiff appealed the findings, and on April 2, 2024, the appeal was granted and his matter remanded for further investigation. Doc. 1–3. On June 21, 2024, USD 268's Title IX investigation substantiated the student's complaint. Doc. 1–3.

On August 13, 2024, Plaintiff was placed on paid administrative leave while the Board of Education determined his disciplinary action. Doc. 1–4. Between August 14–

22, 2024, Plaintiff communicated with union-appointed counsel about the Title IX determination and potential settlement, exchanging at least nine emails. Doc. 34–3.[1] Plaintiff's counsel informed him of and explained the standard of proof in a Title IX process, the decisionmaker's findings and determination, grounds to appeal the determination, the statute of limitations to bring a claim, potential claims available to Plaintiff, options to pursue a grievance procedure, and likely terms of a settlement agreement. Doc. 34–3. Specifically, on August 20, 2024, Plaintiff's counsel advised him as to the uncertainty and risk of pursuing claims and offered referrals to attorneys to pursue filing a complaint and lawsuit. Doc. 34–3.

On August 21, 2024, Plaintiff's counsel advised him that "[i]f you want to file an age discrimination complaint . . . then you should not agree to or sign a waiver of claims." Doc. 34–3. On August 22, 2024, Plaintiff's counsel told him, "if you settle, you will not have any due process hearing (either before the board or an arbitrator), you will not be able to file a discrimination complaint, and you will not be able to file a lawsuit." Doc. 34–3.

On September 23, 2024, Plaintiff signed a Separation Agreement and Release (SAR), which included a resignation letter. Doc. 1 ¶ 51, 1–1. In the SAR, Plaintiff agreed to release USD 268 from liability in exchange for a lump sum payment of $24,550, in addition to Plaintiff's contracted salary accrued while on paid administrative leave of $5,450. Doc. 1–1. The SAR's Release of Claims provision states, in relevant part:

> In consideration of the provisions set forth in Paragraphs 1 and 3 of this Agreement, which Employee agrees is ***valuable consideration to which he would not otherwise be entitled***, Employee for himself, his heirs, executors, and assigns ("Releasors"), forever waives, releases, remises, and discharges the Board of Education, the District, and its affiliates and subsidiaries, together with

[1] Doc. 34–3 was originally filed as an exhibit to the Complaint (Doc. 1–8) but was restricted and later refiled with redactions as Doc. 34–3.

> their respective present, former, and future officers, board members, directors, agents, employees, insurers and self-insurers, attorneys, trustees, fiduciaries, District parents and administrators ("Released Parties") from any rights, claims, counts, causes of action, demands, liabilities, damages, costs, losses, expenses, promises, obligations, covenants, agreements, suits, and rights of every kind or nature, whether now known or discovered in the future, arising from or relating to Employee's employment, including but not limited to the events leading to the voluntary resignation of his employment with the District. Such claims include but are not limited to: (1) ***Employment discrimination and retaliation*** under Title VI (42 U.S.C.A. § 2000d, *et seq.*), ***Title VII*** (42 U.S.C.A. § 2000e, *et seq.*), ***Title IX*** (20 U.SC. § 1681, *et seq.*), and ***42. U.S.C. § 1981 and § 1983***; (2) any claims relating to wrongful or discriminatory treatment; (3) any claims relating to rights under federal, state, or local laws . . . , (4) any claims related to the Employee's right to equal protection of law, ***right to due process of law***, or his rights under the First and Fourteenth Amendments of the United States Constitution; . . . (8) any claims relating to other forms of discrimination on the basis of national origin, age, disability, race, color, creed, religion, sex, or marital status, or any other form of illegal discrimination, retaliation or harassment within the meaning of federal, state, or local laws . . . .
>
> Employee and Releasors covenant and agree that they have not filed, and will not file, any complaint, charge, or action against the District or the Released Parties with any local, state, or federal agency or court arising from or relating to Employee's employment with the District, or from or relating to any act or omission on the part of the District occurring on or prior to the date of this Agreement.

Doc. 1–1 (emphasis added).

Plaintiff's Complaint attempts to state claims for violations of Title IX, discrimination and retaliation under Title VII, age discrimination in violation of the Age Discrimination in Employment Act (ADEA), and deprivation of due process in violation of 42 U.S.C. § 1983 against Defendants USD 268 and its Superintendent Marc A. Woofter.[2] Doc. 1. Plaintiff asserts that the SAR is void and unenforceable because of coercion and constructive duress, misleading legal advice, lack of independent counsel, failure to comply with mandatory legal requirements under the Older Workers Benefit Protection Act (OWBPA) and the ADEA, procedural defects in the Title IX process, and

---

[2] "An action against a person in his official capacity is, in essence, an action against the government entity for whom the person works." *Eberle v. City of Newton*, 289 F. Supp. 2d 1269, 1280 (D. Kan. 2003).

the overbreadth and illegality of the SAR. Doc. 1. Plaintiff alleges that "he was led to believe that federal claims were unavailable or barred" and that he was misled from understanding "the potential for pursuing age discrimination and Title IX claims." Doc. 1 ¶¶ 10, 22.

**II. LEGAL STANDARD**

A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the plaintiff's facts allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a "probability requirement" but requires "more than a sheer possibility" that the defendant is liable. *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

A court accepts all well-pleaded allegations in the complaint as true at the motion to dismiss stage. *Iqbal*, 556 U.S. at 678. The court does not accept legal conclusions nor "[t]hreadbare recitals of the elements of a cause of action" as true. *Id.* The court draws all reasonable inferences from the well-pleaded allegations in the plaintiff's favor. *Dyno Nobel v. Steadfast Ins. Co.*, 85 F.4th 1018, 1025 (10th Cir. 2023). The court determines whether the plaintiff is entitled to offer evidence in support of its claims, not whether the plaintiff will prevail on its claims. *Bean v. Norman*, No. 008-2422-JWL, 2010 WL 420057, at *2 (D. Kan. Jan. 29, 2010).

**III. ANALYSIS**

Federal courts apply state contract law when deciding issues of formation, construction, and the enforceability of settlement agreements. *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000). The Kansas Supreme Court has upheld "an elemental rule that the law favors compromise and settlement of disputes, and generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it." *Krantz v. Univ. of Kansas*, 21 P.3d 561, 567 (Kan. 2001). Similarly, "a party who knowingly and voluntarily authorizes the settlement of her claims cannot avoid the terms of the settlement simply because she changes her mind." *Woods v. Denver Dep't of Revenue*, 45 F.3d 377, 378 (10th Cir. 1995). Courts have a duty to enforce settlement agreements in the absence of fraud, mistake, duress, or illegality. *Nat'l Bank of Andover v. Kansas Bankers Sur. Co.*, 225 P.3d 707, 715 (Kan. 2010).

A party's secret, undisclosed intent is "not to be considered when construing the intent of the parties to a contract." *O'Neill v. Herrington*, 317 P.3d 139, 145 (Kan. App. 2014) (holding that there was a meeting of the minds between the parties as to a full release despite plaintiff's secret intent to release defendant from only one pending claim). A party's mistake of fact, "in the absence of fraud, duress, undue influence, or mental incapacity," does not invalidate a release agreement. *Fieser v. Stinnett*, 509 P.2d 1156, 1160 (Kan. 1973).

An employee and employer may enter into a settlement agreement containing a clear and unambiguous waiver of discrimination claims and barring subsequent claims under federal law. *Poppelreiter v. Straub Int'l, Inc.*, No. 99-4122-SAC, 2001 WL

1464788, at *4 (D. Kan. Oct. 30, 2001). The employee's waiver must be knowing and voluntary. *Id.* The Tenth Circuit has adopted a totality of the circumstances test in determining whether the plaintiff's release was knowing and voluntary. *Torrez v. Pub. Serv. Co. of New Mexico*, 908 F.2d 687, 690 (10th Cir. 1990). Under the totality of the circumstances test, courts consider:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether [p]laintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Id.* at 689–90 (quoting *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir. 1988)). In *Torrez*, the Tenth Circuit held that a material question of fact remained as to whether the release was knowing and voluntary when the language of the release failed to mention waiver of employment discrimination claims, plaintiff's highest level of education was high school, and he neither consulted with an attorney nor received encouragement to do so. *Torrez*, 908 F.2d at 690.

The Court considers each of these factors in turn.

### A. The clarity and specificity of the SAR language.

The SAR states that Plaintiff "forever waives, releases, remises, and discharges" the Board of Education, USD 268, and its agents and employees:

> from any rights, claims, counts, causes of action, demands, liabilities, damages, costs, losses, expenses, promises, obligations, covenants, agreements, suits, and rights of every kind or nature, whether now known or discovered in the future, arising from or relating to Employee's employment, including but not limited to

> the events leading to the voluntary resignation of his employment with the District. Such claims include but are not limited to: (1) Employment discrimination and retaliation under Title VI, Title VII, Title IX, and 42. U.S.C. § 1981 and § 1983; (2) any claims relating to wrongful or discriminatory treatment; (3) any claims relating to rights under federal, state, or local laws, including policies, regulations, or procedures of the District's Board of Education, (4) any claims related to the Employee's right to equal protection of law, right to due process of law, or his rights under the First and Fourteenth Amendments of the United States Constitution[.]

Doc. 1–1 ¶ 5 (internal citations omitted). A separate provision provided for waiver of age discrimination claims:

> Employee forever knowingly and voluntarily waives and releases the District from any rights or claims he may have under the Age Discrimination in Employment Act ("ADEA") or the Older Workers Benefit Protection Act ("OWBPA"). Employee understands that Employee has the right to consult with an attorney prior to signing this Agreement waiving any right(s) or claim(s) Employee may have under the ADEA and OWBPA. Employee understands that he has 21 days within which to consider this Agreement and, should Employee sign the Agreement, that Employee has seven (7) days following its execution to revoke the Agreement and forfeit the settlement payments included herein.

Doc. 1–1 ¶ 6. Finally, the SAR's Voluntary provision states in part, "Employee acknowledges that he voluntarily has entered into this Agreement of his own free will based only upon the terms and conditions included herein and has had the opportunity to consult with an attorney of his choice concerning the meaning and effect of this Agreement." Doc. 1–1.

Here, the SAR is five pages, including the voluntary resignation letter. Doc. 1–1. The language of the SAR is clear and unambiguous. The SAR explicitly mentions Title IX, Title VII, the ADEA, the OWBPA, and 42 U.S.C. § 1983 in its release provisions. Further, these specific citations and references to federal statutes are followed by catch-all clauses, releasing "any claims relating to wrongful or discriminatory treatment" and "any claims relating to rights under federal, state, or local laws." Doc. 1–1. The clear and

broad language leaves no room for doubt that Plaintiff is waiving all claims against USD 268 related to his employment or resignation. No reasonable person reading the SAR could have believed that he was not releasing his claims under Title IX, Title VII, the ADEA, the OWBPA, and 42 U.S.C. § 1983. *See Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

The plain, clear language of the SAR and its explicit references to the federal laws and statutes under which Plaintiff attempts to assert his claims weigh heavily in favor of a finding that Plaintiff knowingly and voluntarily entered into the SAR.

**B. Plaintiff's education and business experience.**

The pleadings do not specifically allege Plaintiff's education or business experience. However, Plaintiff's Complaint alleges that he was employed as a teacher in USD 268 from 2003 to 2024. Doc. 1. Plaintiff does not allege that he is unsophisticated or that he struggled with reading or understanding the SAR. Doc. 1. While Plaintiff may not have a legal background, it is reasonable to infer from his more than two decades of employment as a teacher that he is educated, and he does not raise the issue of his lack of education or business experience. This factor weighs in favor of enforcement of the SAR.

**C. Plaintiff's time for deliberation before signing the SAR.**

The OWBPA and ADEA require that a release provides an employee at least 21 days to consider the agreement and 7 days after execution to revoke the agreement. 29 C.F.R. § 1625.22(e). The employee may accept a shorter period of time by signing early as long as the decision is "knowing and voluntary and is not induced by the employer

through fraud, misrepresentation, a threat to withdraw or alter the offer . . ., or by providing different terms." 29 C.F.R. § 1625.22(e)(6).

In *White v. General Motors Corp.*, the Tenth Circuit held a waiver knowing and voluntary when the plaintiffs received two weeks off work with pay to consider a separation agreement. 908 F.2d 669, 671 (10th Cir. 1990). In *VanLandingham v. Grand Junction Regional Airport Authority*, the Tenth Circuit upheld a separation and release agreement when the employee took 20 days to consider the agreement, which provided a 21-day consideration period and 7-day revocation period. 603 F. App'x 657, 659 (10th Cir. 2015).

Plaintiff admits that the SAR "formally provided a 21-day consideration period under the OWBPA and a seven-day revocation window." Doc. 1 ¶ 24. Plaintiff argues that he was "effectively pressured" into executing the SAR early due to stress, health concerns, and misleading guidance from counsel. Doc. 1 ¶ 24. However, Plaintiff received notice on August 13, 2024 that he was placed on paid administrative leave, pending the Board of Education's determination of disciplinary action. Doc. 1–4. Plaintiff then exchanged multiple emails with his union-appointed counsel over the course of August 14 through 22, 2024. Doc. 34–3. By August 16, 2024, Plaintiff was discussing potential settlement with his counsel. Doc. 34–3. More than 30 days later, Plaintiff signed the SAR on September 23, 2024. Doc. 1–1.

Plaintiff's allegations of being pressured into executing the SAR early are mere conclusory statements and threadbare recitals, not supported by factual allegations or meeting the plausibility standard. *See Iqbal*, 556 U.S. at 678. Plaintiff makes no allegations as to how Defendants induced him into executing the SAR. Doc. 1. Accordingly, Plaintiff's allegations that Defendants violated OWBPA and ADEA

requirements (despite the SAR's plain language) are not well-pleaded allegations and are not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 678.

A period of more than 30 days to consider possible separation and release weighs against a finding of coercion. *See White*, 908 F.2d at 671; *VanLandingham*, 603 F. App'x at 659. The SAR complies with the consideration and revocation periods required by the OWBPA and ADEA, as Plaintiff states in his own Complaint, and the time for consideration of the SAR weighs in favor of its enforcement.

**D. Whether Plaintiff knew or should have known his rights upon execution of the SAR.**

Plaintiff asserts that he did not know he was waiving his age discrimination and Title IX claims. Doc. 1 ¶ 22. Plaintiff claims that he received misleading advice from his counsel that the preponderance of the evidence standard was met and a challenge was unlikely to succeed. Doc. 1 ¶ 21. Plaintiff's Complaint is devoid of any allegations as to why or how the advice from his counsel was inaccurate. Doc. 1. Rather, Plaintiff's own exhibits attached to his Complaint show that his counsel informed him of and explained the standard of proof in a Title IX process, the decisionmaker's findings and determination, grounds to appeal the determination, the statute of limitations to bring a claim, potential claims available to Plaintiff, options to pursue a grievance procedure, and likely terms of a settlement agreement. Doc. 34–3.

Specifically, on August 20, 2024, Plaintiff's counsel advised him as to the uncertainty and risk of pursuing claims and offered referrals to attorneys to pursue filing a complaint and lawsuit. Doc. 34–3. On August 21, 2024, Plaintiff's counsel advised him that "[i]f you want to file an age discrimination complaint . . . then you should not agree to or sign a waiver of claims." Doc. 34–3. On August 22, 2024,

Plaintiff's counsel told him, "if you settle, you will not have any due process hearing (either before the board or an arbitrator), you will not be able to file a discrimination complaint, and you will not be able to file a lawsuit." Doc. 34–3.

Based on Plaintiff's threadbare allegations and his own evidence as to his counsel's statements, Plaintiff received sound counsel from his attorney as to the meaning and effect of waiving his claims. Doc. 1, 34–3. Plaintiff knew that signing the SAR constituted a waiver of all his claims related to his employment, the Title IX investigation, and his resignation—or at the very least, he should have known, based on his communications with his counsel.

**E. Whether Plaintiff was encouraged to seek or received the benefit of counsel.**

An attorney's participation in negotiating a release undercuts an argument that the release was not knowing and voluntary. *Miles v. Unified Sch. Dist. No. 500*, 855 F. App'x 433, 438 (10th Cir. 2021). Provisions 6 and 13 of the SAR both advise Plaintiff of his right to consult with an attorney prior to executing the SAR. Doc. 1–1 ¶¶ 6, 13. While this is more than "sufficient encouragement," Plaintiff also had a union-appointed attorney and did in fact consult with that attorney. Doc. 34–3; *Rutledge v. Int'l Bus. Machines Corp.*, No. 91-1385, 1992 WL 189105, at *3 (10th Cir. Aug. 6, 1992). Plaintiff provided the emails between him and his counsel, which reflect that Plaintiff received sound and beneficial advice. Doc. 34–3.

**F. Whether there was an opportunity for negotiation of the terms of the SAR.**

The time between the notice of administrative leave on August 13, 2024 and Plaintiff's signing of the SAR on September 23, 2024 reflects an opportunity for

negotiation. Doc. 1–1, 1–4. Most importantly, Plaintiff's communications with his counsel reflect that there were negotiations between Plaintiff and USD 268. Doc. 1–8, 34–3. This factor weighs in favor of a finding that Plaintiff knowingly and voluntarily entered into the SAR.

**G. Whether the consideration exceeds the benefits to which Plaintiff was already entitled.**

The SAR provided for consideration of "his contracted salary he has accrued while on paid administrative leave of $5,450" in addition to "a lump sum payment of $24,550." Doc. 1–1. The contracted salary amount of $5,450 is consideration to which Plaintiff was already entitled. Doc. 1–1. The lump sum payment of $24,550 was not consideration to which Plaintiff was already entitled. Doc. 1–1. Accordingly, the SAR's consideration exceeds the benefits to which Plaintiff was already entitled, and this factor weighs in favor of its enforcement.

Each of the *Torrez* factors weighs in favor of a finding that Plaintiff entered into the SAR knowingly and voluntarily. *See Torrez*, 908 F.2d at 689–90. The SAR's language was clear and specified that the release applied to each of the federal statutes under which Plaintiff attempts to bring claims. *See id.* Plaintiff's education and business experience suggest that he is not unsophisticated and was able to read and comprehend the language of the SAR. *See id.* Plaintiff had more than 30 days to consider the possible separation and release, and the SAR provided 21 days for consideration and 7 days for revocation. *See id.* Plaintiff did not revoke the SAR. Plaintiff's communications with his counsel show that he knew or should have known his rights upon execution of the SAR. *See id.* Plaintiff was encouraged to seek advice of counsel and did receive the benefit of advice from counsel. *See id.* Plaintiff had an opportunity to negotiate and did in fact

negotiate the terms of the SAR. *See id*. The consideration in the SAR and accepted by Plaintiff exceeds the benefits to which the employee was already entitled by contract or law. *See id*.

Under the totality of the circumstances, Plaintiff's own allegations and the exhibits to his Complaint establish that he knowingly and voluntarily entered into the SAR. While Plaintiff has clearly changed his mind, that is not a basis to invalidate the SAR. *Woods*, 45 F.3d at 378. This Court has a duty to enforce a valid release contract, knowingly and voluntarily entered into by the parties. *Nat'l Bank of Andover*, 225 P.3d at 715.

The Court finds that Plaintiff failed to plausibly allege that he did not knowingly and voluntarily enter into the SAR. However, the Court briefly addresses Plaintiff's allegations of coercion and duress and misleading advice from counsel or lack of independent counsel.

**H. Plaintiff's allegations fail to amount to coercion and duress.**

Duress or coercion "can invalidate a settlement agreement." *MEG Props. & Invs., LLC v. Gilchrist*, No. 106,697, 2012 WL 3630274, at *9 (Kan. App. Aug. 17, 2012). Duress requires a wrongful act or wrongful threat, "which was intended or should reasonably have been expected to cause such fear as to deny the threatened party the exercise of free will and judgment in its decision to enter into a transaction." *McConwell v. FMG of Kansas City, Inc.*, 861 P.2d 830, 842 (Kan. App. 1993). A threat to exercise a legal right does not constitute duress. *Campbell-Leonard Realtors v. El Matador Apartment Co.*, 556 P.2d 459, 464 (Kan. 1976). A contract is not induced by duress when a party has and takes time to reflect and make up his mind, consults with others,

and receives advice of counsel. *Hastain v. Greenbaum*, 470 P.2d 741, 748 (Kan. 1970). For example, an employer's negative performance reviews and suggestions of further action if plaintiff's performance did not improve did not amount to duress when the plaintiff had three months to consider early retirement, seven days to revoke the agreement, and opportunity to consult an attorney. *Phillips v. Moore*, 164 F. Supp. 2d 1245, 1252 (D. Kan. 2001).

Economic duress requires proof of a wrongful act or threat, the lack of a reasonable alternative to entering into the contract, and the lack of free will. *Phillips*, 164 F. Supp. 2d at 1245 (citing *Comeau v. Mt. Carmel Medical Center, Inc.*, 869 F. Supp. 858, 865 (D. Kan. 1994)). Financial distress or pressure is a common occurrence when contracting and not sufficient to void a release. *Thiessen v. Gen. Elec. Cap. Corp.*, 232 F. Supp. 2d 1230, 1243 (D. Kan. 2002).

Here, Plaintiff's allegations do not describe a wrongful act or wrongful threat by Defendants. Doc. 1. Plaintiff alleges that he was under pressure from "extreme stress, fear of health, and misleading guidance" from his own counsel. Doc. 1 ¶ 24. Plaintiff does not allege any wrongful acts or threats by Defendants that caused this pressure, nor do these allegations amount to duress or coercion. Instead, Plaintiff was placed on paid leave and had more than 30 days to consider settlement and release. Doc. 1, 1–4. Plaintiff consulted with an attorney about his options. Doc. 34–3. The "threat" of possible termination was merely an exercise of USD 268's legal right to discipline Plaintiff based on the results of the Title IX investigation. *See Campbell-Leonard Realtors*, 556 P.2d at 464. Plaintiff's stress about professional consequences is insufficient to amount to duress, and Plaintiff's allegations do not describe a wrongful act or wrongful threat by Defendants.

**I. Plaintiff's allegations of misleading legal advice or lack of independent counsel fail to meet the plausibility standard.**

An independent counsel is one not subject to another's influence or control. *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 230 (2020). Independent advice of counsel requires an opportunity to confer confidentially and privately with a competent attorney who was uninterested in the matter. *Matter of Est. of Kern*, 716 P.2d 528, 535 (Kan. 1986).

Plaintiff did confer confidentially and privately with a competent attorney who was uninterested in his matter. Doc. 1, 34–3. Plaintiff has not pled sufficient allegations to show that his union-appointed counsel was not independent. While Plaintiff alleges he was misled, he does not allege any false statements, wrongful threats, or misrepresentations by his counsel. Doc. 1. To the extent that Plaintiff alleges his counsel provided less than competent representation, the matter is between Plaintiff and his counsel, not Defendants. Doc. 1 ¶ 16; *see Namoko v. Cognisa Sec., Inc.*, 264 F. App'x 753, 755 (10th Cir. 2008).

Having considered Plaintiff's well-pleaded allegations in the Complaint in a light most favorable to Plaintiff, the Court finds that Plaintiff has failed to plausibly allege that he did not knowingly and voluntarily enter into the SAR. Accordingly, the SAR bars Plaintiff's claims, and because amendment would be futile, they are dismissed with prejudice.

## IV. CONCLUSION AND ORDER

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 12) is **GRANTED.**[3]

**IT IS FURTHER ORDERED** that Plaintiff's claims are dismissed with prejudice. The Clerk is directed to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

Dated this **13th** day of August, 2026, at Topeka, Kansas.

*s/ Anthony W. Mattivi*
Anthony W. Mattivi
United States District Judge

[3] Plaintiff's Motion for Leave to File Limited Sur-Reply (Doc. 26) is denied as moot.